**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

ALVIS CLINTON HIGGINS,                    )
                                          )
                    Petitioner,           )
                                          )
v.                                        )        **Case No. 06-CV-0429-CVE-TLW**
                                          )
MIKE ADDISON, Warden,                     )
                                          )
                    Respondent.           )

## OPINION AND ORDER

Before the Court is petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. #

1). Petitioner is a state prisoner.  Respondent filed a response (Dkt. # 13) to the petition, and

provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 13, 14, 15).

Petitioner filed a reply (Dkt. # 18). Petitioner was represented by counsel when he filed both his

petition and reply to respondent's response.  However, by Order filed July 17, 2008 (Dkt. # 24), the

Court allowed counsel of record to withdraw after petitioner indicated his desire to proceed *pro se*.

Appearing *pro se*, petitioner filed a "Statement of Evidence in Narrative Form" (Dkt. # 20) and an

"Amended Statement of Evidence in Narrative Form" (Dkt. # 25).  For the reasons discussed below,

the Court finds the petition shall be denied.

### *BACKGROUND*

Petitioner Alvis Clinton Higgins worked at the Tulsa office of the Department of

Rehabilitation Services in the visual services division.  On October 3, 2000, petitioner was charged

by Information with three (3) counts of Rape in the First Degree (Counts 1, 2, and 3), two (2) counts

of Lewd Molestation (Counts 4 and 6), and Sexual Battery (Count 5), in Tulsa County District

Court, Case No. CF-2000-5424.  On July 9-18, 2002, petitioner was tried by a jury. During trial, the

jury heard testimony from three (3) victims. SM, daughter of petitioner's coworker Ann Miller, testified that in August 1999, when she was nine (9) years old, she was sexually molested by petitioner when she was in his office.  She testified that he touched her vagina two (2) times, once on the outside of her clothes. The second time, he put his hand in her shorts and stuck his finger up her vagina. She also testified that he asked her to kiss his "dick." When she said "no," he pushed her head towards his exposed penis until her lips touched his penis.  LT, daughter of another of petitioner's coworkers, testified that beginning in the summer of 1995 when she was nine (9) years old, Petitioner "stuck his penis in [her] vagina" against her will her three (3) times. The third complaining witness was BC. Petitioner provided counseling services to BC, who is visually impaired. BC testified that in April  2000, she was concerned she might be pregnant. Because she was afraid to tell her father, she asked petitioner to bring a pregnancy test kit to the apartment where she lived with her father.  While she was attempting to urinate on the test stick, petitioner rubbed her clitoris.  He asked if he could "stimulate her."  She said "no." BC was seventeen (17) years old in April 2000.

After hearing all of the evidence presented at trial, including petitioner's testimony, the jury returned verdicts of guilty on the charges of Lewd Molestation (Counts 4 and 6) and Sexual Battery (Count 5), and recommended sentences of twenty (20) years on each of the Lewd Molestation convictions and five (5) years on the Sexual Battery conviction.  The jury found petitioner not guilty on the First Degree Rape charges (Counts 1, 2, and 3). On August 29, 2002, the trial court judge sentenced petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. Petitioner was represented during his criminal proceedings by attorneys David Blades and Jo Ann Pool.

Petitioner was granted a direct appeal out of time in the Oklahoma Court of Criminal Appeals ("OCCA").  Represented by attorney Gloyd McCoy, he raised ten (10) propositions of error:

1.    There can be no harmless error in this case; the evidence against Mr. Higgins was insufficient to support a conviction and, even if there was evidence to prove his guilt, the State's case was not overwhelming.

2.    The trial court erred in allowing the jury to take to the jury room a videotape of an interview of the child who made the allegations against him.

3.    The introduction of the videotapes denied Mr. Higgins a fair trial.

4.    Mr. Higgins was denied effective assistance of counsel at trial.

5.    Mr. Higgins was denied a fair trial due to improper comments made by the prosecutor.

6.    Jurors were intimated [sic] by presence of "Bikers Against Child Abuse."

7.    Mr. Higgins was denied a fair trial due to the fact that he was required to wear an ankle monitor during his trial.

8.    The trial judge's actions denied Mr. Higgins a fair trial; the trial judge limited the juror's credibility determination.

9.    Mr. Higgins was punished twice for the same offense; accordingly, one of his convictions for Lewd Molestation should be vacated.

10.    The trial court improperly denied a motion for the jury to view the premises.

See Dkt. # 13, Ex. 1.  In an unpublished summary opinion filed October 12, 2004, in Case No. F-2003-720 (Dkt. # 13, Ex. 3), the OCCA rejected all ten (10) claims and affirmed the Judgment and Sentence of the trial court.

On March 17, 2005, petitioner filed his first application for post-conviction relief in the state district court. By order filed April 15, 2005 (Dkt. # 13, Ex. 4, attachment), the state district court denied relief on the following eight (8) claims:

3

Ground 1:    Petitioner was denied effective assistance of appellate counsel in that 1. He failed to fully develop the proposition that petitioner received ineffective assistance of trial counsel and 2. He failed to develop on appeal the proposition that the trial court through its ruling abused its discretion and thereby deprived petitioner of a fair trial and right to Due Process.

Ground 2:    The State failed to meet its burden of proof in count four of the information and evidence did not support the conviction and the court was without subject matter jurisdiction to hear count four or pass judgment thereon.

Ground 3:    Appellate counsel's assistance was ineffective because he failed to argue on appeal that the State failed to meet its burden of proof and evidence adduced at trial does not support the conviction in count five because the State failed to prove the required element of lack of consent and the jury failed to follow its instructions to apply the beyond a reasonable doubt standard to each element of the charged offense.

Ground 4:    Appellate counsel's assistance was ineffective because he failed to argue on appeal that the State failed to meet its burden of proof that petitioner was guilty beyond a reasonable doubt of the charged offense alleged in count six and evidence did not support conviction.

Ground 5:    Appellate counsel's assistance was ineffective because he failed to argue on appeal that counts four and five as charged in the information are insufficient in their language and did not meet the statutory requirements to charge petitioner with the particulars essential to identify the crimes.

Ground 6:    The court erroneously represented State sentencing statutes to prosecutor, defense counsel and jury and petitioner and thereby lost jurisdiction to impose the sentence recommended by the jury and petitioner's defense counsel was ineffective due to his failure to know the penalties applicable to the charges for which petitioner was on trial and appellate counsel was ineffective due to his failure to raise these issues on appeal.

Ground 7:    Mr. Higgins' trial counsel was ineffective because he failed to investigate and offer any evidence to mitigate the charges or the sentences.  Appellate counsel's assistance was equally ineffective because he failed to raise and fully develop on appeal the proposition that trial counsel was ineffective by his failure to investigate and fully represent the defendant.

Ground 8:    Mr. Higgins avers that he was subjected to double jeopardy when tried and convicted and sentenced on muliplicatous [sic] charges (count four and count six) in violation of his Fifth Amendment right against double jeopardy.

4

See Dkt. # 13, Ex. 4, attached order.  Petitioner appealed. By order filed June 21, 2005, in Case No. PC-2005-0454 (Dkt. # 13, Ex. 5), the OCCA affirmed the district court's denial of post-conviction relief.  However, the OCCA determined that because petitioner failed to file a post-conviction appeal record, it was unable to address petitioner's contention that the state district court did not address all issues raised.  See Dkt. # 13, Ex. 5.

On October 4, 2005, petitioner filed a second application for post-conviction relief.  By order filed October 24, 2005, the state district court denied relief on the following five (5) claims:

| | |
|---|---|
| Ground 1: | The conviction and sentence is in violation of the constitution of the U.S. and the Constitution or laws of this state. |
| Ground 2: | Petitioner was denied the effective assistance of trial and appellate counsel. |
| Ground 3: | Petitioner was denied his statutory and or constitutional right to a fair trial because the trial court failed to hold the statutorily required indicia of reliability hearing. |
| Ground 4: | Petitioner was denied a Post Conviction appeal through no fault of his own. |
| Ground 5: | The cumulative effect of all the errors combined denied petitioner his constitutional right to a fair trial. |

(Dkt. # 13, Ex. 6, attached order).  Petitioner appealed. By order filed April 5, 2006, in Case No. PC-2005-1131 (Dkt. # 13, Ex. 7), the OCCA found that petitioner had been denied a complete appeal in his first post-conviction proceeding through no fault of his own and fully addressed all claims previously raised, but not adjudicated, in Case No. PC-2005-454, as well as the claims raised in Case No. PC-2005-1131.  Upon review of petitioner's claims, the OCCA affirmed the state district court's denial of post-conviction relief.  See Dkt. # 13, Ex. 7.

On July 26, 2006, petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). Petitioner raises seven (7) grounds for relief, as follows:

5

Ground 1:      Petitioner was denied effective assistance of trial counsel.

Ground 2:      The trial court required petitioner to wear an ankle monitor in view of the jury.

Ground 3:      The court allowed demonstrations by "Bikers Against Child Abuse."

Ground 4:      Introduction of video taped statement into evidence was error.

Ground 5:      The State failed to prove all elements of the offense charged in Count Four.

Ground 6:      Ineffective assistance of appellate counsel.

Ground 7:      Cumulative error.

See Dkt. # 1.  In response to the petition, respondent asserts that petitioner's claims are not cognizable in these proceedings, or do not justify relief under 28 U.S.C. § 2254(d), or are procedurally barred. See Dkt. # 13.

## *ANALYSIS*

### A.      **Exhaustion/Evidentiary Hearing**

Before addressing the claims raised in the petition, the Court must determine whether petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Exhaustion of a federal claim may be accomplished by showing either (a) that the state's appellate court has had an opportunity to rule on the same claim presented in federal court, or (b) that there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant.  28 U.S.C. § 2254(b); see also White v. Meachum, 838 F.2d 1137, 1138 (10th Cir. 1988). The exhaustion doctrine is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994) (quoting Rose, 455 U.S. at 518); see also Stewart v. Martinez-Villareal, 523 U.S. 637, 644 (1998).  "In order

6

to exhaust his state remedies, a federal habeas petitioner must have first fairly presented the substance of his federal habeas claim to state courts." <u>Hawkins v. Mullin</u>, 291 F.3d 658, 668 (10th Cir. 2002) (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999)).

As discussed in more detail below, several of petitioner's claims are unexhausted because they have never been fairly presented to the OCCA.  However, in response to the petition, respondent states he is "waiving exhaustion and applying an anticipatory bar to these claims." <u>See</u> Dkt. # 13. The Court agrees with respondent that, in light of the procedural posture of this case, it would be futile to require petitioner to return to state court because his unexhausted claims would undoubtedly be subject to a procedural bar independent and adequate to prevent habeas corpus review. Therefore, there is no available state corrective process, and consideration of the claims is not precluded by the exhaustion requirement of § 2254(b). Nonetheless, as discussed in Part C, the claims are procedurally barred. <u>Anderson v. Sirmons</u>, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007) (describing application of "anticipatory procedural bar" to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it). Petitioner's remaining claims were fairly presented to the OCCA on either direct or post-conviction appeal. Therefore, the exhaustion requirement is satisfied in this case.

In addition, the Court finds that petitioner is not entitled to an evidentiary hearing.  <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain

federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In this case, the OCCA adjudicated petitioner's claims asserted in grounds 2, 3, 4, and part of ground 5 on direct appeal. In addition, the OCCA adjudicated petitioner's claim of ineffective assistance of appellate counsel (ground 6) on post-conviction appeal. Therefore, to the extent those claims are cognizable, they shall be reviewed pursuant to § 2254(d).

### 1. Wearing ankle monitor in front of jury (ground 2)

As his second proposition of error, petitioner alleges that the trial court erred in requiring him to wear an ankle monitor in view of the jury. He claims that both the ankle monitor and a tracking device were visible during voir dire and throughout the entire trial. Petitioner raised this claim on direct appeal where it was rejected by the OCCA as follows:

> . . . the record suggests that the ankle monitor was placed on Higgins' ankle only on the one evening that the trial continued past 5:00 p.m. and that it was worn under his sock and was not ever visible to the jury. *Davis v. State* notes that the purpose behind the statutory prohibition against trying a defendant in shackles is twofold: (1)

protecting the defendant's right to the free use of his faculties, both mental and physical, during a trial; and (2) protecting the defendant's presumption of innocence in the eyes of the jury.  Higgins acknowledges that he was not actually tried in "shackles," under the explicit terms of 22 O.S.2001, § 15.  And this Court finds that the record contains no evidence that either (1) Higgins' freedom of movement was at all affected by the temporary use of the ankle monitor during his trial, or (2) the jury could have been prejudiced by the presence of the monitor, since it was not visible.  Hence this claim is likewise rejected.

(Dkt. # 13, Ex. 3 (footnotes omitted)).

The Supreme Court of the United States has never addressed the issue of whether a defendant's fair trial rights are violated when he is required to wear an ankle monitor under a sock during a jury trial.  As a result, this Court cannot find that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.  The Court recognizes, however, that "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need," and that "a criminal defendant has a right to remain free of physical restraints that are visible to the jury . . . but that the right may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum."  Deck v. Missouri, 544 U.S. 622, 626, 628 (2005).

Petitioner was not restrained by shackles.  At the time of trial, he was subjected to electronic monitoring via an ankle monitor, at the least during "any time he le[ft] the building."  See Tr. Trans. Vol. 1 at 3.  The record reflects that during the first day of voir dire, the ankle monitor was removed. Id.  The record also reflects that when it became apparent to the trial court judge that the trial would continue past 5:00 p.m., he specifically admonished petitioner to "put a sock over the ankle bracelet for these evenings that we work past five."  Id. Vol. 2 at 141. The OCCA noted that the record suggested that petitioner wore the ankle monitor only one time when the jury trial continued past

9

5 p.m. <u>See</u> Dkt. # 13, Ex. 3. Petitioner disputes that finding. <u>See</u> Dkt. ## 20, 21, 25. Contrary to the OCCA's finding, petitioner maintains that he wore the ankle monitor throughout the trial and that the "communication monitor unit" was kept on the defense table where it was partially or wholly visible to the jurors. <u>See</u> Dkt. # 25, attachment C.

At sentencing, the trial court heard argument on petitioner's motion for a new trial. The argument was presented on behalf of petitioner by attorney Steve Hjelm.  Petitioner and his trial counsel, David Blades and Jo Anne Pool, were all present.  <u>See</u> Sent. Trans. at 3-4. In response to Mr. Hjelm's argument that petitioner suffered prejudice because he wore the ankle monitor during trial, the State argued as follows:

> First of all, there was no objection by Defendant's counsel.  Second of all, the Defendant was allowed to take off the monitor during almost all the trial.  Thirdly, on the one occasion when he wore the monitor, there were special precautions to make sure the jury did not see the monitor, and he was admonished by the Court to wear the monitor underneath the sock, and I believe everyone viewed that did happen so that the jury did not see that he had a monitor.

<u>See</u> Sent. Trans. at 5.  In response to the State's argument, the trial court stated as follows:

> I understand, although I do believe that Mr. Blades did object to his client's wearing an ankle monitor.  In fact, it is this Court's recollections that I allowed Mr. Higgins to remove the ankle monitor for some portion of the trial.  In fact, he was only required to wear the ankle monitor when we went past 5:00 on one evening and there was no one in Court Services who could remove it for us.  Nevertheless, throughout the trial the ankle monitor was worn under his sock.  Quite frankly, no one could see it.  In fact, I observed this throughout the trial when it was worn.  In addition, I never saw any sort of attachment.  I believe that was hidden from not only the jurors' view but from the Court's view by his lawyer at trial, lawyers at trial, Ms. Pool and Mr. Blades.
>
> I believe, quite frankly, Mr. Hjelm, that this issue of an ankle monitor had absolutely no effect whatsoever on the jury, nor was the jury aware of the presence of the monitor.  In fact, even though I was aware of the monitor, I couldn't see it.  That proposition will be overruled.

10

Id. at 5-6.  When the trial judge made those comments, neither petitioner nor his trial counsel made any objection to the trial judge's recollection of the facts surrounding the ankle monitor.

In support of his habeas claim, petitioner provides his own affidavit, see Dkt. # 25, attachment C, and a letter dated March 11, 2008, from Sherri Carrier, Director of Tulsa County Division of Court Services, see id. attachment B.  Ms. Carrier states that petitioner was "placed on an Electronic Monitoring Device on 11/03/00 on case # CF-00-6050. Your monitoring continued jointly with case # CF-00-5424 until your trial on 07/18/02. The Monitor was then removed and you were taken into custody from court." See id.  Nothing in that letter, however, refutes the state courts' finding that the monitoring device was removed during trial except for one evening when the trial continued past 5 p.m. Furthermore, even if the evidence provided by petitioner could be sufficient to rebut the presumption of correctness[1] afforded the state courts' finding of fact that he wore the ankle monitor only one time during trial, petitioner does not dispute that the monitor was worn under his sock.  Nothing in the record suggests nor does petitioner offer any evidence suggesting that the jurors recognized the ankle monitor or the purpose of the communication monitor unit.  Upon careful review of the record, the Court finds petitioner has failed to demonstrate entitlement to habeas corpus relief on this claim.  28 U.S.C. § 2254(d).

### 2.  Presence of "Bikers Against Child Abuse" (ground 3)

As his third proposition of error, petitioner contends that the presence outside the courtroom of members of the group "Bikers Against Child Abuse" intimidated the jury and played a major role in the outcome of his trial.  The OCCA rejected this claim on direct appeal, finding as follows:

---

[1]      Under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

11

the only reference in the record to "Bikers Against Child Abuse" occurs just before the State's opening statements.  The issue was never raised again, and the record contains no evidence that the members of this group ever acted improperly during Higgins' trial or that the jurors were in any way intimidated or affected by their presence.  Hence this claim is rejected.

(Dkt. # 13, Ex. 3 (footnotes omitted)).

As discussed above, petitioner is not entitled to habeas corpus relief on this claim unless he demonstrates that the OCCA's adjudication was "contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). In an opinion entered December 11, 2006, the Supreme Court addressed a habeas petitioner's claim that he was prejudiced by spectators' courtroom conduct.  See Carey v. Musladin, 549 U.S. 70 (2006).  In that case, the petitioner claimed that his fair trial rights were violated because members of the murder victim's family wore buttons displaying the victim's image.  The Supreme Court determined that although it had previously addressed state-sponsored courtroom practices, see Estelle v. Williams, 425 U.S. 501 (1976), and Holbrook v. Flynn, 475 U.S. 560 (1986), it had not previously provided guidance on the issue of the effect of spectator conduct on a defendant's right to a fair trial.  Musladin, 549 U.S. at 76.  As a result, the Court concluded that "[g]iven the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ied] clearly established Federal law.'"  Id. at 77 (citing 28 U.S.C. § 2254(d)(1)).

In the instant case, the OCCA issued its direct appeal ruling on October 12, 2004, or more than two (2) years before issuance of Musladin.  As a result, there was no clearly established law as determined by the United States Supreme Court providing guidance on the issue of the prejudicial

effect of spectators' conduct at the time of Petitioner's direct appeal.  Therefore, this Court cannot find that the OCCA's adjudication of this claim was "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States."   28 U.S.C. § 2254(d)(1).

The Court recognizes petitioner's reliance on Norris v. Risley, 918 F.2d 828 (9th Cir. 1990) (finding that the wearing of "Women Against Rape" buttons during trial on charges of kidnapping and sexual intercourse without consent deprived defendant of fair trial).  In that pre-AEDPA case, the Ninth Circuit Court of Appeals reversed the district court's denial of habeas relief, finding that the spectators' first amendment rights do not outweigh the defendant's right to a fair trial.  Norris, 918 F.2d 832.  However, petitioner fails to recognize that in Musladin, 549 U.S. at 74, the Supreme Court distinguished Norris, finding that in both Norris and Musladin, the Ninth Circuit  incorrectly concluded that the Supreme Court had previously established, in Williams and Flynn, a test for inherent prejudice applicable to spectators' courtroom conduct.  See United States v. Farmer, 583 F.3d 131, 149 (2d Cir. 2009) (discussing analysis in Musladin).  In Musladin, the Supreme Court stressed that "the effect on a defendant's fair-trial rights of the spectator conduct to which [defendant] objects is an open question in our jurisprudence." Musladin, 549 U.S. at 76. In this case, therefore, petitioner's reliance on Norris is misplaced.  Petitioner is not entitled to habeas corpus relief on this claim.

### 3.  Videotapes improperly admitted into evidence and into jury room (ground 4)

In his fourth ground of error, petitioner claims that the trial court erred in admitting videotaped interviews of SM into evidence and in allowing the videotapes to be taken into the jury deliberation room.  On direct appeal, the OCCA ruled as follows:

. . . the videotape exhibit at issue was admitted by agreement of the parties, after portions to which Higgins objected had been excised, thereby waiving his objections to it. Furthermore, this Court has clarified that an exhibit is not the same as a witness's actual trial *testimony* (recorded or otherwise), and that it is within the trial court's discretion whether to allow the jury to review exhibits in the jury room. S.M. testified live at trial and was subjected to a thorough cross-examination. Hence the trial court did not abuse its discretion in allowing the jury to review the videotaped exhibit during its deliberations.

(Dkt. # 13, Ex. 3 (emphasis in original) (footnote omitted)).

"In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir.1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (*en banc*)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation omitted).

Petitioner's ground four claim challenging the trial court's admission of videotapes into evidence and allowing them into the jury room during deliberations is not cognizable in this habeas corpus proceeding unless he demonstrates that the rulings rendered his trial fundamentally unfair. The record confirms that the redacted videotapes of SM's interviews were admitted into evidence by agreement of the parties. See Tr. Trans. Vol. 6 at 44. In addition, at the conclusion of closing arguments, the trial judge directed the bailiff to take the jury instructions and the admitted exhibits into the jury room. Id. Vol. 9 at 116. SM testified at trial and was subjected to extensive cross-examination. Id. Vol. 4 at 45-210. The OCCA has fashioned a "bright line" rule concerning the

14

proper use of video and audiotapes by the jury during deliberations as follows: "taped testimony may not go with the jury into deliberations; taped exhibits may." See Stouffer v. State, 147 P.3d 245 (Okla. Crim. App. 2006) (quoting Davis v. State, 885 P.2d 665, 669 (Okla. Crim. App. 1994)). Thus, it is clear from the record that the videotapes were properly admitted into evidence under state law and that the jury's access to the videotaped interviews of SM was not a violation of state law.

Even if the videotapes were erroneously admitted into evidence and erroneously allowed into the jury room, petitioner has failed to demonstrate that his trial was rendered fundamentally unfair as a result. Petitioner attempted to challenge the credibility of SM by presenting evidence, in the form of expert testimony by Dr. Judith K. Adams, that the law enforcement officials conducting the interviews used improper, coercive techniques to obtain the incriminating allegations made by SM. Dr. Adams testified that in her opinion, the interviewers were highly biased, they did not conduct an impartial and thorough investigation, and they improperly used leading questions and peer pressure. See Tr. Trans. Vol. 7 at 134-35. Although the videotaped interviews of SM contain her allegations that petitioner sexually molested her, the admission of the videotapes was relevant to petitioner's argument that her allegations resulted from improper and biased interview techniques. Petitioner has failed to demonstrate that allowing the videotaped interviews into the jury room rendered his trial fundamentally unfair.

The Court recognizes that in the habeas petition, counsel for petitioner asserts that during her testimony at trial, SM "recanted what she said during her taped interview." See Dkt. # 1 at 12. However, having reviewed the videotapes and SM's trial testimony, the Court finds that representation to be inaccurate. The Court also recognizes that in the petition, counsel for petitioner cites Crawford v. Washington, 541 U.S. 36 (2004) (holding that admission of recorded testimonial

statement by petitioner's wife violated Confrontation Clause because, due to marital privilege, wife was unavailable to testify at trial and petitioner had no opportunity for cross-examination), in support of his claim that the videotaped interviews were improperly admitted. Although petitioner's claim based on Crawford is unexhausted, this Court is authorized to deny relief on the merits. 28 U.S.C. § 2254(b)(2). Petitioner is not entitled to habeas relief on this argument because his reliance on Crawford is misplaced.  In Crawford, the Supreme Court specifically stated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Crawford, 541 U.S. at 59 n.9. As indicated above, SM testified at trial and was subjected to extensive cross-examination by defense counsel.  Nothing in Crawford prevents admission of the videotaped interviews at trial or into the jury room.  Petitioner is not entitled to habeas corpus relief on this claim.

**4. Sufficiency of the evidence supporting conviction on Count 4, Lewd Molestation**

As his fifth proposition of error, petitioner claims that the State failed to present sufficient evidence to support his conviction for Lewd Molestation.  In support of this claim, petitioner alleges that Jury Instruction No. 8 "misled the jury" and "did [not] define what constituted 'acts against public decency and morality.'" See Dkt. # 1 at 13.  On direct appeal, petitioner argued that the only evidence against petitioner was the testimony of the complaining witnesses, and their testimony was contradictory and inconsistent.  See Dkt. # 13, Ex. 1 at 14.  The OCCA rejected petitioner's challenge to the sufficiency of the evidence, as raised on direct appeal, finding that "although the State's evidence was contested by Higgins, who testified in his own defense, taken in the light most favorable to the State, it was more than sufficient to support each of the three counts upon which he

16

was convicted." See Dkt. # 13, Ex. 3.  The OCCA also noted that "the testimony of the victims upon which Higgins was convicted was credible and not 'unworthy of belief,' as he suggests." Id. at n.2.

As a preliminary matter, and as discussed in more detail in Part C below, petitioner has never raised a claim challenging the adequacy of Jury Instruction No. 8 to the state courts.  Therefore, the claim is unexhausted and cannot provide a basis for habeas corpus relief.  To the extent petitioner claims, as he did on direct appeal, that the evidence supporting his conviction for Lewd Molestation (Count 4), was insufficient, a writ of habeas corpus will not issue unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. at § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Tenth Circuit authority is divided as to "whether, under AEDPA, we review a sufficiency-of-the-evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1)." Romano v. Gibson, 239 F.3d 1156, 1164 n.2 (10th Cir. 2001); see also Dockins v. Hines, 374 F.3d 935, 939 (10th Cir. 2004). Under either standard, petitioner's claim in this case fails.

In examining petitioner's sufficiency of the evidence claim, the appropriate inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998). In evaluating the evidence presented at trial, the Court does not weigh

conflicting evidence or consider witness credibility. Wingfield v. Massie, 122 F.3d 1329, 1332 (10th Cir. 1997); Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996). Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Further, the Court evaluates the sufficiency of the evidence by "consider[ing] the collective inferences to be drawn from the evidence as a whole." United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997) (quoting United States v. Hooks, 780 F.2d 1526, 1532 (10th Cir. 1986)). Under the AEDPA, the Court must decide whether the OCCA's decision that there was sufficient evidence to support a jury's finding of guilt was contrary to or an unreasonable application of Jackson. See 28 U.S.C. § 2254(d)(1); Spears v. Mullin, 343 F.3d 1215, 1238-39 (10th Cir. 2003).

This Court looks to Oklahoma law for the substantive elements of Lewd Molestation applicable to the sufficiency of the evidence standard. See, e.g., Spears, 343 F.3d at 1238; see also Jackson, 443 U.S. at 324 n.16. Under Oklahoma law and the facts of this case as they pertain to the conduct charged in Count 4, see Tr. Trans. Vol. 4 at 21-22, petitioner could not be convicted of Lewd Molestation unless the State proved beyond a reasonable doubt the following elements: (1) the defendant was at least three years older than the victim; (2) the defendant knowingly and intentionally; (3) touched/mauled/felt; (4) the body or private parts; (5) of any child under sixteen years of age; (6) in any lewd or lascivious manner. See Okla. Stat. tit. 21, § 1123; see also OUJI-CR 2d 4-129.

In his state direct appeal brief, see Dkt. # 9, Ex. 1, petitioner argued that the only evidence supporting his convictions was the testimony of the complaining witnesses and that testimony was

not credible.  However, as indicated above, on habeas corpus review, this Court does not evaluate the credibility of witnesses. Wingfield, 122 F.3d at 1332; Messer, 74 F.3d at 1013.  Instead, the Court must view the evidence in the "light most favorable to the prosecution," Jackson, 443 U.S. at 319, and "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Grubbs, 982 F.2d at 1487.  After viewing the evidence in the light most favorable to the prosecution, the Court finds any rational trier of fact could have found the essential elements of Lewd Molestation beyond a reasonable doubt.  Petitioner has not demonstrated that the OCCA's adjudication of this claim was an unreasonable application of Jackson.  As a result, he is not entitled to habeas corpus relief on this claim.

### 5.  Ineffective assistance of appellate counsel (ground 6)

In his sixth proposition of error, petitioner claims he received ineffective assistance of appellate counsel. He makes the general allegation that appellate counsel failed "to develop a showing of relevant instances of the ineffectiveness of petitioner's trial counsel." See Dkt. # 1 at 14.  He also claims that appellate counsel "failed to clearly state or fully develop the due process violations which had occurred during petitioner's trial." Id.  However, he identifies no specific instances of either ineffective assistance of trial counsel or due process violations.  Nor does he provide any factual support for his claim of ineffective assistance of appellate counsel.  This petition was filed by an attorney.  As a result, this Court will not engage in the liberal construction afforded pleadings prepared by a *pro se* litigant. Furthermore, this Court will not develop a claim for petitioner.  For those reasons, petitioner's claim of ineffective assistance of appellate counsel as raised in the petition should be denied.

To the extent petitioner alleges that appellate counsel provided ineffective assistance in failing to raise the unexhausted claims of ineffective assistance of trial counsel identified in ground 1 of the petition, the Court finds the claim itself is unexhausted and, for that reason, cannot provide a basis for habeas corpus relief.  The Court further finds, as discussed in Part C below, that any claim that appellate counsel provided ineffective assistance in failing to raise the unexhausted ground 1 claims, as well as the underlying claims of ineffective assistance of trial counsel identified in ground 1, are procedurally barred and should be denied on that basis.

To the extent petitioner seeks habeas corpus review of the claim of ineffective assistance of appellate counsel presented to the OCCA on post-conviction appeal, the Court finds he is not entitled to habeas corpus relief.  In its order affirming the denial of post-conviction relief in Case No. PC-2005-1131, the OCCA acknowledged that petitioner had alleged ineffective assistance of appellate counsel for failing to raise on direct appeal his claims that the trial court abused its discretion in (1) refusing to allow the jury to visit the crime scene, (2) refusing to allow him to present witnesses to impeach the credibility of Detective Witt,[2] and (3) refusing to admit evidence of alleged stalking incidents by a victim's mother.  See Dkt. # 13, Ex. 7. The OCCA rejected petitioner's claim of ineffective assistance of appellate counsel as raised on post-conviction appeal, citing Strickland v. Washington, 466 U.S. 668 (1984), and finding that Petitioner's complaints about evidentiary rulings and trial strategies did not establish that his appellate counsel performed

---

[2]      Detective Christopher Witt was a police officer for the City of Tulsa and participated in conducting the interviews of SM.

deficiently.  See Dkt. # 13, Ex. 7.  The OCCA also found that petitioner had "not established a material issue of fact, and he has not established that he is actually innocent." Id.[3]

Nowhere in the petition or the reply does petitioner's attorney demonstrate or even allege that the OCCA's adjudication of his ineffective assistance of appellate counsel claim on post-conviction appeal was an unreasonable application of Strickland.  The Court will not craft an argument for petitioner.  Simply alleging that "Petitioner is guaranteed effective assistance of counsel on direct appeal, but in this case he was denied the effective assistance of appellate counsel guaranteed under the Constitution," see Dkt. # 1 at 14, does not provide information sufficient for meaningful habeas corpus review.  Having failed to demonstrate that the OCCA unreasonably

---

[3]      The Court notes that in resolving petitioner's claim of ineffective assistance of appellate counsel in his first post-conviction appeal, Case No. PC-2005-454, the OCCA cited Cartwright v. State, 708 P.2d 592 (Okla. Crim. App. 1985), and found that "[f]ailure to raise each and every issue is not determinative of ineffective assistance of counsel and counsel is not required to advance every cause of argument regardless of merit."  See Dkt. # 13, Ex. 5. That premise deviates from the controlling federal standard. Cargle v. Mullin, 317 F.3d 1196, 1202-05 (10th Cir. 2003) (explaining that (1) the merit of the omitted claim is the focus of the appellate ineffectiveness inquiry, (2) omission of a sufficiently meritorious claim can, in itself, establish ineffective assistance, and, thus, (3) the state court's rejection of an appellate ineffectiveness claim on the basis of the legal premise invoked here is wrong as a matter of federal constitutional law). See also Malicoat v. Mullin, 426 F.3d 1241, 1248 (10th Cir. 2005) (following Cargle). Because the OCCA's first analysis of petitioner's ineffectiveness allegations in PC-2005-454 deviated from the controlling federal standard, it is not entitled to deference on habeas review. Cargle, 317 F.3d at 1205; see also Malicoat, 426 F.3d at 1248.  However, in petitioner's second post-conviction appeal, Case No. PC-2005-1131, the OCCA determined that petitioner had been denied a complete appeal in Case No. PC-2005-454 through no fault of his own and proceeded with a full review of all post-conviction claims raised by petitioner.  In its second order affirming the denial of post-conviction relief, entered in Case No. PC-2005-1131, the OCCA applied the Strickland standard. See Dkt. # 13, Ex. 7. As a result, the OCCA's adjudication of petitioner's claim of ineffective assistance of appellate counsel is entitled to deference under 28 U.S.C. § 2254(d).

applied <u>Strickland</u> to his post-conviction claim of ineffective assistance of appellate counsel, petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).

**C.  Procedural bar (ground 1, parts of grounds 4 and 5, and ground 7)**

The record confirms that petitioner has raised numerous unexhausted claims.  In Ground 1, petitioner identifies a total of thirteen instances of ineffective assistance of trial counsel.  Of those instances, only two, instances 4 and 7, have been presented to the OCCA.  In instance 4, petitioner claims that trial counsel failed to object to improper remarks by the prosecutor during closing argument.  On direct appeal,[4] petitioner alleged that trial counsel provided ineffective assistance in failing to object to improper comments by the prosecutor during closing argument.  However, he failed to identify within the claim of ineffective assistance of counsel which comments were allegedly improper.[5]  In his habeas petition, petitioner provides five page numbers from the trial transcript containing allegedly improper comments.  Given the undeveloped nature of the claim raised on direct appeal, the Court cannot determine whether the OCCA reviewed the comments now identified by petitioner in his habeas petition. Therefore, the instant habeas claim has not been "fairly presented" to the OCCA and is unexhausted.  <u>See</u> <u>Hawkins v. Mullin</u>, 291 F.3d 658, 668

---

[4]     Petitioner raised a claim of ineffective assistance of counsel on direct appeal.  He argued that counsel failed to object during trial causing the trial judge to lodge objections on his behalf, counsel failed to object to improper questions by the trial judge during voir dire, counsel failed to object to improper comments by the prosecutor during closing argument, and counsel failed to present evidence that he had been cleared of any wrongdoing by both the Glenpool police and his employer as to the incident involving BC. <u>See</u> Dkt. # 13, Ex. 1.

[5]     The Court notes that, on direct appeal, petitioner also raised a claim alleging that the prosecutor made improper comments during closing argument.  He complained that the prosecutor called him a liar, <u>see</u> Tr. Trans. Vol. 9 at 113.  The OCCA, reviewing for plain error since defense counsel lodged no objection to the comments, found the comments were not improper and denied relief.  <u>See</u> Dkt. # 13, Ex. 3.

(10th Cir. 2002) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)).  As part of instance 7 of ground 1, petitioner complains that trial counsel provided ineffective assistance at sentencing when he failed to present mitigation evidence. See Dkt. # 1 at 6-7. That claim was raised in petitioner's first application for post-conviction relief. See Dkt. # 13, Ex. 4, attached order. However, the OCCA refused to consider the merits of the claim, finding that consideration of the claim was barred by res judicata since a claim of ineffective assistance of counsel was raised on direct appeal.[6] See Dkt. # 13, Ex. 5. The remainder of the instances of ineffective assistance of trial counsel identified in ground 1 have never been presented to the OCCA and are unexhausted.

In addition, that part of petitioner's ground 4 claim based on Crawford v. Washington, 541 U.S. 36 (2004), and his ground 5 claim challenging the jury instruction for the charge of Lewd Molestation (Count 4), have never been presented to the OCCA and are unexhausted.  His claim of cumulative error (ground 7) was first raised in his second application for post-conviction relief. See Dkt. # 13, Ex. 6, attached order.  The OCCA denied the cumulative error claim as procedurally barred.  See Dkt. # 13, Ex. 7.

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court has declined or would decline to reach the merits of that claim on independent and adequate state procedural grounds, unless petitioner can "demonstrate

---

[6]     To the extent the procedural bar imposed on petitioner's claim of ineffective assistance of trial counsel for failing to present mitigation evidence at sentencing is not adequate to preclude federal habeas corpus review, the claim would be denied on the merits.  The Tenth Circuit has noted that a petitioner's Eighth Amendment or due process or equal protection rights are not violated when a trial court does not consider mitigating factors during sentencing in a noncapital case. Scrivner v. Tansy, 68 F.3d 1234, 1240 (10th Cir. 1995) (citing United States v. LaFleur, 971 F.2d 200, 211-12 (9th Cir. 1991)). This was a noncapital case. Thus, petitioner's trial counsel did not perform deficiently in failing to present mitigation evidence at sentencing. Strickland, 466 U.S. at 687-88.

cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 724 (1991); see also Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009); Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995); Gilbert v. Scott, 941 F.2d 1065, 1067-68 (10th Cir. 1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes, 46 F.3d at 985. A finding of procedural default is an adequate state ground if it has been applied evenhandedly "'in the vast majority of cases.'" Id. (quoting Andrews v. Deland, 943 F.2d 1162, 1190 (10th Cir. 1991)). The Tenth Circuit has recognized that "Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground" barring federal habeas corpus review. Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999). In addition, an "anticipatory procedural bar" may be applied to deny an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it. Anderson v. Sirmons, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007).

In his reply, petitioner does not acknowledge respondent's procedural bar defense and fails to challenge independence and adequacy. See Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999) (defendant bears burden of contesting independence and adequacy of state procedural bar once state has asserted the affirmative defense). Nonetheless, the Court finds the procedural bar applicable to petitioner's claims is independent and adequate to preclude habeas corpus review. First, petitioner's unexhausted claims have been defaulted three (3) times: first, when he failed to raise them on direct appeal, and then, two (2) more times when he failed to raised them in his applications for post-conviction relief. As a result, the OCCA would undoubtedly apply a procedural bar, based on

24

petitioner's failure to raise these grounds on direct appeal or in an application for post-conviction relief. That bar would be an "independent" state ground because state law provides "the exclusive basis for the state court's holding." Maes, 46 F.3d at 985. The procedural bar applied to petitioner's claims first raised on post-conviction appeal was based on Okla. Stat. tit. 22, § 1086, and was also based on an "independent" state ground. Next, as to the adequacy of the anticipatory procedural bar applicable to petitioner's claims of ineffective assistance of trial counsel, the Tenth Circuit Court of Appeals has recognized that a procedural bar imposed on a claim brought in a second application for post-conviction relief that could have been but was not raised in a previous application is adequate to bar habeas review of ineffective assistance of counsel claims. Smallwood v. Gibson, 191 F.3d 1257, 1268 (10th Cir. 1999) (citing Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998)). Thus, petitioner's multiple defaults of his unexhausted claims, including his claims of ineffective assistance of trial counsel, would result in imposition of a procedural bar adequate to preclude federal review. The procedural bar imposed by the OCCA on petitioner's claims first raised in his post-conviction appeal, including his claim of cumulative error, is adequate to preclude federal review. Sherrill, 184 F.3d at 1175.

This Court may not consider petitioner's procedurally barred claims unless he is able to show "cause and prejudice" for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750; Demarest v. Price, 130 F.3d 922, 941-42 (10th Cir. 1997). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for

prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

In his reply, petitioner offers no explanation for his failure to raise these defaulted claims on direct appeal. The Court recognizes that in certain circumstances, appellate counsel's ineffectiveness can constitute "cause" sufficient to excuse a state prisoner's procedural default. See Murray, 477 U.S. at 488-89. However, the ineffective assistance of appellate counsel claim itself must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. Id. at 489; Edwards v. Carpenter, 529 U.S. 446, 453 (2000). In this case, petitioner did raise a claim of ineffective assistance of appellate counsel on post-conviction appeal. However, he did not allege that appellate counsel provided ineffective assistance in failing to raise many of the defaulted claims identified in the habeas petition.[7] As a result, even if petitioner

---

[7]    Several instances of ineffective assistance of trial counsel identified in the petition lack specificity. For example, petitioner complains in instances 1 and 7 that witnesses were not called to testify for the defense, but he fails to identify the witnesses. See Dkt. # 1 at 5-6. Similarly, in instance 10, petitioner raises a claim concerning the trial court's refusal to allow five witnesses to testify for the defense. See id. at 7. Again, he fails to identify the five witnesses. As a result, the Court cannot determine with certainty that the habeas claims were raised in state court proceedings, either as ineffective assistance of trial counsel or ineffective assistance of appellate counsel for failing to raise trial counsel ineffectiveness. However, even if petitioner argued in his post-conviction proceedings that appellate counsel provided ineffective assistance in failing to raise any of the claims of ineffective assistance of trial counsel identified in ground 1 of the habeas petition, he does not allege ineffective assistance of appellate counsel as "cause" to overcome the procedural bar. Furthermore, as discussed in Part B(5), petitioner has not demonstrated or even alleged that the OCCA's adjudication of any claim of ineffective assistance of appellate counsel was contrary to Strickland. Therefore, no exhausted claim of ineffective assistance of appellate counsel can serve as "cause" to overcome the procedural bar applicable to petitioner's ground 1 claims of ineffective assistance of trial counsel.

claimed ineffective assistance of appellate counsel as "cause" to overcome the procedural bar applicable to petitioner's defaulted claims, the claim would be denied. Edwards, 529 U.S. at 452-53 (finding that an ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted, and, unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

Petitioner may also overcome the procedural bar applicable to his defaulted claims under the fundamental miscarriage of justice exception. That exception to the procedural bar doctrine is applicable only when a petitioner asserts a claim of actual innocence. Herrera v. Collins, 506 U.S. 390, 403-04 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-41 (1992); see also Schlup v. Delo, 513 U.S. 298 (1995). To meet this test, a criminal defendant must make a colorable showing of factual innocence. Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000) (citing Herrera, 506 U.S. at 404). Under Schlup, a showing of innocence sufficient to allow consideration of procedurally barred claims must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup, 513 U.S. at 316. Petitioner has the burden of persuading this Court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 329. "The exception is intended for those rare situations 'where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake.'" Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation omitted). Petitioner does claim that he is actually innocent of the crimes for which he was convicted. However, he provides no new evidence

supporting his claim.  Therefore, petitioner has failed to demonstrate that he falls within the fundamental miscarriage of justice exception to the doctrine of procedural bar.

Accordingly, because petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his claims are not considered, the Court concludes that it is procedurally barred from considering the merits of petitioner's procedurally barred claims. Coleman, 510 U.S. at 724. He is not entitled to habeas corpus relief on those claims.

*CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus should be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the petition for writ of habeas corpus (Dkt. # 1) is **denied**.

**DATED** this 30th day of March, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT